## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HENRY SEARCY, JR.,<br><br>                    Plaintiff,<br><br>      v.<br><br>THOMAS J. VILSACK, *et al.*,<br><br>                Defendants. | Case No. 23-cv-140 (JMC) |

### MEMORANDUM OPINION

Henry Searcy, proceeding pro se, sues U.S. Department of Agriculture (USDA) officials for alleged mistreatment he endured while employed at the agency. ECF 1.[1] Defendants move to dismiss for failure to state a claim and lack of subject matter jurisdiction. ECF 4. Searcy has filed several motions challenging Defendants' Westfall Act certification, ECF Nos. 9–12, as well as a motion for leave to file an amended complaint, ECF 22.

While briefing in this case was underway, Searcy filed another, virtually identical case, which was assigned to another judge in this District. *See Searcy v. Vilsack*, No. 23-cv-3166, ECF 1 (D.D.C. Oct. 23, 2023). The district court dismissed that case for lack of subject matter jurisdiction, and the D.C. Circuit affirmed. *Searcy v. United States*, No. 23-cv-3166, 2024 WL 2152505 (D.D.C. May 14, 2024), *aff'd*, No. 24-5160, 2025 WL 222308 (D.C. Cir. Jan. 15, 2025).

The doctrine of collateral estoppel, otherwise known as issue preclusion, provides that once a court has decided an issue of law or fact, its decision generally prevents those same parties from

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

relitigating that issue in the future. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). This rule "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and . . . prevent[s] inconsistent decisions." *Id.* The issues at the heart of Searcy's case were already conclusively resolved in 23-cv-3166, and those decisions have preclusive effect here. Furthermore, the Court concludes that Defendants' Westfall Act certification was proper. As such, the Court will **GRANT** Defendants' motion to dismiss, ECF 4; **DENY** Searcy's motions challenging Defendants' Westfall certification, ECF Nos. 9–12; and **DENY** Searcy's motion for leave to file an amended complaint, ECF 22, as futile.

## I.    FACTUAL BACKGROUND

Searcy worked for the USDA as an Economic and Community Development Policy and Outreach Coordinator. *See* ECF 1-1 at 173. In November 2017, the USDA announced that it planned to realign staff in Searcy's office, the Office of Outreach (OAO), to either the Office of External Affairs (OEA) or the Rural Development Innovation Center. ECF 1 ¶¶ 1–2. Soon after, Searcy learned that his duties would be realigned to the OEA as part of this departmental reorganization. *Id.* ¶¶ 2, 4. Searcy contends that this realignment or reassignment was unlawful because his role was required by statute to be located within the Rural Development (RD) Mission Area, not the OEA. *See id.* ¶¶ 12–13.

In October 2018, OEA Director Marie Wheat told Searcy "that a budget related to his OAO duties was not available," but that she needed help with various OEA duties. *Id.* ¶ 5.

Searcy alleges that Wheat and Julie Henderson (the Rural Development Space Coordinator) "conspired" to relocate his office. *Id.* ¶ 8. In January 2019, Searcy discovered that his belongings had been moved from his single office to a group office on a different floor. *Id.* ¶ 6. This set off a months-long dispute over where he should work. At one point, Wheat "kicked in the

door" of the office where Searcy was working and yelled at him "in an abusive aggressive manner" to "GET OUT . . . AND SIT IN ROOM 4807 – NOW!" *Id.* ¶ 12. In total, Searcy alleges that he was required to move offices five times in eight months "in order to force [him] to perform only OEA duties." *Id.*

In March 2019, Wheat again told Searcy that there was no budget available for his OAO duties. *Id.* ¶ 9.

During a July 2019 performance review, Wheat told Searcy that she knew he earned a higher salary than her and other OEA employees, and that she "needed to get more out of him." *Id.* ¶ 10. The meeting "took a turn" when Searcy asked Wheat to allocate OEA funds to his OAO duties. *Id.* Wheat responded, "you do not get to spend OEA funds!" and told him that OEA does not perform OAO functions. *Id.* Searcy "expressed his lack of interest in performing OEA functions." *Id.* Wheat said that she would "MANDATE [Searcy] to perform OEA functions and require him to move to room 4168." *Id.*

In October 2019, Wheat accused Searcy of being AWOL and said that she would conduct a "[m]anagement inquiry" into his time and attendance issues. *Id.* ¶ 11. Later that month, Wheat removed Searcy from his position on the Interagency Council for the Homeless and replaced him with a political appointee. *Id.* ¶ 12.

In October 2020, Searcy contacted HR because he believed that his position description (PD) had been "falsified." *Id.* ¶ 13. According to Searcy, the PD had been altered to state that he reported to the Director of OEA rather than the Deputy Undersecretary, and worked for the OEA rather than the RD Mission Area. *Id.* When Searcy contacted an HR representative to ask about the changes, the representative told him that "Angilla Denton reassigned [him] to the OEA." *Id.* ¶ 14. Searcy filed a "whistleblower complaint" about the changes to his PD. *Id.*

3

Disputes over Searcy's job duties persisted. Searcy continued to inquire into why there was no budget for his OAO functions, and Wheat continued to insist that he perform only OEA functions. *See id.* ¶¶ 15–18. During a meeting, employee relations representative Stephanie Mitchell told Searcy that he was "more than welcome to file whatever grievance action that is appropriate." *Id.* ¶ 17. Searcy told Mitchell and Wheat, "NO ONE SHOULD BE FORCED TO DO WORK THAT IS NOT A PART OF THEIR JOB DESCRIPTION!" and Mitchell and Wheat hung up. *Id.* In April 2020, Wheat and Misty Giles "removed [Searcy's] OAO duties . . . and forced [him] to perform OEA functions only." *Id.* ¶ 18.

Searcy filed an Equal Employment Opportunity (EEO) complaint in April 2020. *Id.* ¶ 19. In September 2020, Searcy learned that he was being relocated to the RD Innovation Center. *Id.* ¶ 22. In October 2020, Searcy reviewed his employment paperwork and learned that he had been "reassigned" rather than "realigned" to the RD Innovation Center. *Id.* ¶ 23. He believed that was incorrect and filed a reprisal complaint with the Merit Systems Protection Board (MSPB). *Id.* He filed another reprisal complaint with the MSPB in January 2021, *id.* ¶ 27, and another EEO complaint for reprisal in April 2022, *id.* ¶ 33.

## II.    PROCEDURAL BACKGROUND

Searcy filed this lawsuit in January 2023, suing Secretary of Agriculture Thomas Vilsack, Deputy Undersecretary of Rural Development Justin Maxson, and USDA employees Misty Giles, Angilla Denton, Jacki Ponti-Lazaruk, and Marie Wheat. ECF 1. Searcy brings four claims. First, he alleges tortious interference with employment, arguing that Giles, Denton, Ponti-Lazaruk, and Wheat "interfered with the employment relationship between the Plaintiff and the OAO by removing [his] OAO functions and forcing [him] to perform RD OEA functions only." *Id.* ¶ 43. Second, he alleges negligent infliction of emotional distress, arguing that management's actions

4

caused him to be depressed. *Id.* ¶¶ 46–50. Third, Searcy brings a negligence claim, contending that his supervisors failed to "review the Plaintiff's PD and realign the Plaintiff according to duties identified within his PD," consistent with (Searcy's understanding of) the relevant statutory provisions. *Id.* ¶¶ 51–57. Finally, Searcy seeks punitive damages. *Id.* ¶¶ 58–62.

Defendants filed a motion to dismiss. ECF 4. Because Searcy explicitly sought relief in tort, Defendants construed the complaint as one for relief under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.*, and therefore substituted the United States as the proper defendant pursuant to the Westfall Act, 28 U.S.C. § 2679. ECF 4-1. Defendants argue, among other things, that Searcy's complaint should be dismissed because his claims for a personal injury incurred at work are barred by the Federal Employees' Compensation Act (FECA). ECF 4 at 8. In the alternative, even if FECA did not preempt Searcy's FTCA claim, Defendants explain that he would still be unable to prevail. *Id.* at 9. Searcy has not exhausted administrative remedies as required by the FTCA; a plaintiff cannot sue under the FTCA for tortious interference with contract rights; and a plaintiff cannot maintain a suit for punitive damages against the United States. *Id.* at 9–10.

The Court entered a *Fox* order advising Searcy of his obligations in responding to Defendants' motion, ECF 5, and Searcy filed an opposition, ECF 15. He also filed four motions styled as motions "for Attorney General's Review" of Ponti, Wheat, Denton, and Giles' actions. *See* ECF 9; ECF 10; ECF 11; ECF 12. Defendants construed these motions as challenges to its Westfall certification and filed an opposition. ECF 13. (Searcy also filed two motions for summary judgment, which the Court denied as premature. *See* Dec. 7, 2023 Min. Order.)

In October 2023—while briefing in this case was underway—Searcy filed another case, 23-cv-3166, which was assigned to Judge Trevor McFadden. Searcy sued Secretary Vilsack and

Deputy Undersecretary Maxson, but did not name the other four USDA employees as defendants. *See Searcy v. Vilsack*, No. 23-cv-3166, ECF 1 (D.D.C. Oct. 23, 2023). Otherwise, the complaint in 23-cv-3166 is virtually identical to the complaint in the instant case. *Compare id.*, *with* ECF 1.

As in the instant case, Defendants in 23-cv-3166 construed Searcy's complaint as one for relief in tort under the FTCA, substituted the United States as the proper defendant, and moved to dismiss. *Searcy*, No. 23-cv-3166, ECF 10 (D.D.C. Feb. 15, 2024). And again, as in the instant case, Defendants argued that Searcy's claims were barred by FECA and, regardless, would fail under the FTCA. *Id.* at 12–17.

In May 2024, Judge McFadden granted Defendants' motion and dismissed the case without prejudice for lack of subject matter jurisdiction. *Searcy v. United States*, No. 23-cv-3166, 2024 WL 2152505, at *1 (D.D.C. May 14, 2024). Judge McFadden found that substitution under the Westfall Act was proper because "the named Defendants were acting within the scope of their authority as federal officials at the time of the events alleged." *Id.* at *1 n.1. Judge McFadden agreed with Defendants that FECA was the exclusive remedy for Searcy's claims and the district court therefore lacked subject matter jurisdiction over the action. *Id.* at *3. He also explained that even if Searcy's claims were not barred by FECA, the court would still lack jurisdiction because Searcy failed to exhaust administrative remedies as required by the FTCA. *Id.* Although Searcy had "made some attempts to exhaust related claims against USDA officials" by filing MSPB and EEO complaints, those complaints did not fulfill the FTCA's particular exhaustion requirements. *Id.* at *3–4. Finally, Judge McFadden determined that Searcy's claims for tortious interference were barred by the FTCA's intentional tort exception, and that he could not maintain a punitive damages claim against the United States. *Id.* at *3 n.2.

Searcy appealed Judge McFadden's decision, and this Court stayed the instant case pending resolution of that appeal. *See* Sept. 5, 2024 Min. Order. The D.C. Circuit summarily affirmed. *Searcy v. United States*, No. 24-5160, 2025 WL 222308 (D.C. Cir. Jan. 15, 2025) (per curiam). The Circuit held that Searcy "ha[d] shown no error in the district court's conclusion that the United States is the proper defendant under the Westfall Act," and that even assuming his FTCA claims were not barred by FECA, Searcy did not show that he had exhausted his administrative remedies as required by the FTCA. *Id.* at *1. As the court explained, "[a]dministrative exhaustion of related statutory claims, such as a Title VII discrimination claim, does not on its own suffice to exhaust administrative remedies for specific tort claims for purposes of the FTCA." *Id.*

After the D.C. Circuit issued its decision, Searcy moved this Court for leave to file an amended complaint. ECF 22. The proposed amended complaint is identical to the original complaint, except that Searcy seeks to remove Secretary Vilsack and Deputy Undersecretary Maxson as Defendants, leaving only Giles, Denton, Ponti-Lazaruk, and Wheat. *Id.* at 1–2. Defendants oppose, arguing that amendment would be futile because the proposed amended complaint would not survive a motion to dismiss. ECF 26. Defendants explain that Searcy's claims are barred by collateral estoppel because they involve the same issues that were already resolved— first by Judge McFadden and then by the D.C. Circuit—in 23-cv-3166. *Id.* at 8–10. Defendants also argue that Searcy cannot successfully rebut the government's Westfall certification. *Id.* at 10–13.

### III.    LEGAL STANDARD

When assessing a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), "[i]t is to be presumed that a cause lies outside [the federal courts'] limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The court

accepts the complaint's allegations as true, *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015), and "where necessary . . . may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts," *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

Because Searcy is proceeding pro se, the Court considers his complaint "in light of all filings, including filings responsive to a motion to dismiss." *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015). Complaints filed by pro se litigants are "held to less stringent standards than formal pleadings drafted by lawyers," *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), but still "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct,'" *id.* at 681–82 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## IV.    ANALYSIS

The Court begins with Searcy's motions "for Attorney General's Review," which it construes as challenges to Defendants' Westfall Act certification. *See* ECF 9; ECF 10; ECF 11; ECF 12. Because the certification is proper and the United States is the appropriate defendant, the Court denies those motions. The Court then turns to Defendants' motion to dismiss. ECF 4. The key issues Defendants raise in their motion to dismiss—whether FECA is the exclusive remedy for Searcy's tort claims and, regardless, whether he failed to exhaust or otherwise could not pursue his claims under the FTCA—were already resolved in 23-cv-3166. *See id.* at 8–10; *see Searcy*, No. 23-cv-3166, 2024 WL 2152505, at *2–4. Under the doctrine of collateral estoppel, Searcy may not relitigate those issues here. The Court therefore concludes, as did Judge McFadden and the D.C. Circuit, that Searcy's complaint must be dismissed for lack of subject matter jurisdiction.

Finally, the Court denies Searcy's motion for leave to file an amended complaint, ECF 22, because the proposed amended complaint also would not survive Defendants' motion to dismiss.

### A. Westfall Certification

The Westfall Act "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007). When a plaintiff sues a federal employee, the Attorney General can "certify that the employee 'was acting within the scope of his office or employment at the time of the incident.'" *Id.* at 229–30 (quoting 28 U.S.C. §§ 2679(d)(1), (2)). That is what the United States did here. *See* ECF 4-1. Upon that certification, the employee is dismissed from the lawsuit and the United States is substituted as the defendant. *Osborn*, 549 U.S. at 230.

Searcy has filed four motions calling for the Attorney General to review Ponti-Lazaruk, Wheat, Denton, and Giles's actions—which the Court understands to be challenging Defendants' Westfall certification.[2] ECF 9; ECF 10; ECF 11; ECF 12. When a plaintiff contests a Westfall certification, the certification "constitute[s] *prima facie* evidence that the employee was acting within the scope of his employment." *Wuterich v. Murtha*, 562 F.3d 375, 381 (D.C. Cir. 2009) (quoting *Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 662 (D.C. Cir. 2006) (per curiam)). "To rebut the certification and obtain discovery, a plaintiff must 'alleg[e] sufficient facts that, taken as true, would establish that the defendant['s] actions exceeded the scope of [his] employment.'" *Id.* (quoting *Stokes v. Cross*, 327 F.3d 1210, 1215 (D.C. Cir. 2003)).

---

[2] It is not clear whether Searcy also challenges Defendants' Westfall certification as to Secretary Vilsack and Deputy Undersecretary Maxson. If so, that issue was already fully litigated in 23-cv-3166: Searcy sued Vilsack and Maxson, the United States substituted itself for those Defendants, and both Judge McFadden and the D.C. Circuit found that the substitution was proper. *See Searcy*, No. 23-cv-3166, 2024 WL 2152505, at *1 n.1; *Searcy*, No. 24-5160, 2025 WL 222308, at *1. Searcy is therefore estopped from relitigating that issue as a matter of issue preclusion—a doctrine the Court discusses in greater detail below. *See infra* Part IV.B. Because Searcy did not name the four individual USDA employees (Ponti-Lazaruk, Wheat, Denton, and Giles) as defendants in 23-cv-3166, the district court in that case did not have occasion to determine whether those employees were acting outside the scope of their employment. The Court therefore addresses that question on its own terms rather than as a matter of issue preclusion.

"Scope of employment questions are governed by the law of the place where the employment relationship exists"—here, the District of Columbia. *Majano v. United States*, 469 F.3d 138, 141 (D.C. Cir. 2006). Under D.C. law, the "[c]onduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master; and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master." *Schecter v. Merchants Home Delivery, Inc.*, 892 A.2d 415, 427 (D.C. 2006) (quoting Restatement (Second) of Agency § 228 (1958)). This test often amounts to "whether the defendant merely was on duty or on the job when committing the alleged tort." *Jacobs v. Vrobel*, 724 F.3d 217, 221 (D.C. Cir. 2013) (quoting *Harbury v. Hayden*, 522 F.3d 413, 422 n. 4 (D.C. Cir. 2008)). Thus, for example, the D.C. Circuit has held "that a congressman acted within the scope of his employment when he allegedly defamed the plaintiff during a telephone call with the press because '[s]peaking to the press during regular work hours in response to a reporter's inquiry falls within the scope of a congressman's authorized duties.'" *Id.* at 222 (quoting *Ballenger*, 444 F.3d at 664).

Searcy argues that Giles, Denton, Ponti-Lazaruk, and Wheat acted outside the scope of their employment by reassigning or realigning his position (which was created by Section 14218 of the Farm Bill) without appropriate authority to do so, and subsequently requiring him to perform different functions. *See* ECF 15 at 6; ECF 27 at 2–7. Per Searcy, "[t]he authority to reassign and realign OAO/OPPE positions . . . rests within the USDA Departmental Management within the Assistant to the Secretary for Administration (ASA) not Rural Development." *Id.* But even assuming that is true, an employee's conduct may fall within the scope of their employment even if that conduct is not expressly authorized. "[T]he test is whether the employee's 'actions [were]

of the same general nature as that authorized or incidental to the conduct authorized.'" *Conyers v. Westphal*, 235 F. Supp. 3d 72, 78 (D.D.C. 2017) (quoting *Haddon v. United States*, 68 F.3d 1420, 1424 (D.C. Cir. 1995), *abrogated in part by Osborn*, 549 U.S. 225). Assigning employees job duties and requiring them to perform those duties clearly meets that test. *See, e.g.*, *id.* (approving Westfall certification even though plaintiff argued that defendant's actions were beyond the scope of employment because he was not her supervisor and therefore was not authorized to discipline her). With that in mind, Defendants' actions meet the four-part part test laid out above. *See Schecter*, 892 A.2d at 427. Assigning Searcy to perform certain job duties within a particular office are the kinds of actions Defendants are "employed to perform." *Id.* Those actions were performed "within the authorized time and space limits"—i.e., in the course of the workday. Defendants took these actions to serve the employer's interest by effectuating an agency-wide reorganization. *See id.*; ECF 1 ¶ 1. Finally, Searcy does not allege any intentional use of physical force against him. The closest he comes is an allegation that Wheat "kicked in the door" of Searcy's office and yelled at him "in an abusive aggressive manner" to leave that office and sit in a different office instead. ECF 1 ¶ 12. But even assuming that qualifies as intentional use of force against another, it does not change the Court's analysis. Barging into a subordinate's workspace and yelling at them to move to a different office is certainly inappropriate, but it is not entirely "unexpectable" by an employer. *Schecter*, 892 A.2d at 427. In sum, Searcy's alleged facts demonstrate that Giles, Denton, Ponti-Lazaruk, and Wheat were "on the job," and were not acting outside the scope of their employment. *Jacobs*, 724 F.3d at 22; *see Wuterich*, 562 F.3d at 381.

Searcy also seems to argue that the FTCA (and by extension, the Westfall Act) is inapposite because 28 U.S.C. § 2679(b)(2)(B) applies. *See, e.g.*, ECF 9 at 1. That provision states that the FTCA is not the exclusive remedy for torts committed by federal employees acting within the

11

scope of their employment if the action "is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized." 28 U.S.C. § 2679(b)(2)(B). Searcy seems to contend that Section 14218 of the Farm Bill (now codified at 7 U.S.C. § 6941a) provides such a cause of action. That provision reads: "The Secretary of Agriculture shall establish a Coordinator for Chronically Underserved Rural Areas . . . to be located in the Rural Development Mission Area." 7 U.S.C. § 6941a. The Court can discern neither an express nor implied right of action here. *See El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 889 (D.C. Cir. 2014) (describing four-factor test to determine whether an implied right of action exists). The provision does not "focus on any particular class of beneficiaries whose welfare Congress intended to further." *California v. Sierra Club*, 451 U.S. 287, 294 (1981). Instead, it is "phrased as a directive to [the] federal agenc[y]" and regulates the agency's obligations. *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) (quoting *Univs. Rsch. Assn., Inc. v. Coutu*, 450 U.S. 754, 772 (1981)). Courts regularly find that such provisions do not confer any private right of action. *See, e.g.*, *Coutu*, 450 U.S. at 771–72 (no private right of action where statute provided that certain federal contracts "shall contain" minimum wage provisions); *Godwin v. Sec'y of Hous. & Urb. Dev.*, 356 F.3d 310, 312 (D.C. Cir. 2004) (explaining that it is unlikely that Congress would create an implicit private right of action when "enacting a statute that creates federal obligations," given that "agency action can normally be reviewed by a district court pursuant to its federal question jurisdiction").

Because Searcy has not plausibly alleged that Giles, Wheat, Denton, and Ponti-Lazaruk acted outside the scope of their employment by realigning or reassigning him, and because 7 U.S.C. § 6941(a) does not independently authorize suit against federal employees, Defendants' Westfall substitution is proper and the United States is the appropriate defendant in this case. The

Court therefore denies Searcy's motions challenging Defendants' Westfall certification. ECF 9; ECF 10; ECF 11; ECF 12.

**B. Collateral Estoppel**

Now that the Court has confirmed that the United States is the appropriate Defendant, the rest of the case can be resolved as a matter of collateral estoppel. The doctrine of collateral estoppel, also known as issue preclusion, provides that once a court has decided an issue of law or fact, its decision generally prevents those same parties from relitigating the issue in the future. *Allen*, 449 U.S. at 94. Issue preclusion has three requirements: (1) "the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case"; (2) "the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case"; and (3) "preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Martin v. Dep't of Just.*, 488 F.3d 446, 454 (D.C. Cir. 2007) (quoting *Yamaha Corp. of Amer. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)). Even though Searcy filed the instant case before filing 23-cv-3166, "it is the first final judgment rendered in one of the actions which becomes conclusive in the other action, regardless of which action was brought first," Restatement (Second) of Judgments § 27 (1982), and a final judgment in 23-cv-3166 was entered before any judgment in this case. It is also immaterial that 23-cv-3166 was dismissed for lack of subject matter jurisdiction, because "[i]ssue preclusion applies to threshold jurisdictional issues." *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 41 (D.C. Cir. 2015).

With the Westfall certification issue resolved, this case is essentially a carbon copy of 23-cv-3166. Searcy challenges the same employment action—his reassignment or realignment—that he challenged before Judge McFadden. The key merits questions here are (1) whether Searcy's

claims are barred by FECA, and in the alternative, (2) whether he exhausted his FTCA claims or is otherwise unable to pursue his claims under that statute. *See* ECF 4 at 8–10. Those issues were "contested by the parties and submitted for judicial determination in" 23-cv-3166. *Martin*, 488 F.3d at 454; *see Searcy*, No. 23-cv-3166, 2024 WL 2152505, at *2–4. Judge McFadden "actually and necessarily determined" that FECA provides the exclusive remedy for Searcy's tort claims. *Martin*, 488 F.3d at 454; *Searcy*, No. 23-cv-3166, 2024 WL 2152505, at *3. He further determined, and the D.C. Circuit agreed, that even assuming FECA did not bar Searcy's FTCA claims, Searcy had failed to exhaust administrative remedies under the FTCA. *Searcy*, No. 23-cv-3166, 2024 WL 2152505, at *3–4; *see Searcy*, No. 24-5160, 2025 WL 222308, at *1. Judge McFadden also found that Searcy's tortious interference claims were barred by the FTCA's intentional tort exception, and that Searcy's punitive damages claim was barred because the United States has not waived sovereign immunity as to punitive damages claims under the FTCA. *Searcy*, No. 23-cv-3166, 2024 WL 2152505, at *3 n.2. The D.C. Circuit therefore held that Judge McFadden properly dismissed Searcy's complaint for lack of subject matter jurisdiction. *Searcy*, No. 24-5160, 2025 WL 222308, at *1. Finally, preclusion in this case does not "work a basic unfairness to the party bound by the first determination." *Martin*, 488 F.3d at 454 (quoting *Yamaha*, 961 F.2d at 254). The Court is particularly sensitive to this question given Searcy's pro se status, but—after a thorough review of both the district court and appellate record in 23-cv-3166—is more than persuaded that Searcy fully litigated these issues in his other case.

For the foregoing reasons, the Court concludes that it lacks subject matter jurisdiction over Searcy's claims and therefore grants Defendants' motion to dismiss. ECF 4.

### C.  Motion for Leave to File Amended Complaint

Finally, Searcy moves for leave to file an amended complaint. ECF 22. The proposed amended complaint is identical to the original complaint, except that Searcy seeks to remove Secretary Vilsack and Deputy Undersecretary Maxson as Defendants, leaving only Giles, Denton, Ponti-Lazaruk, and Wheat. *Id.* at 1–2. "Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss." *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996). That is the case here, because removing Secretary Vilsack and Deputy Undersecretary Maxson does not change the Court's foregoing analysis. Defendants have substituted the United States as the sole defendant in place of Giles, Denton, Ponti-Lazaruk, and Wheat, and the Court has already found that Westfall certification to be proper. Nor, as Defendants point out in their opposition, would Searcy's amendment change the preclusive effect of the district court and D.C. Circuit's rulings in 23-cv-3166. *See* ECF 26 at 8–10. Searcy's proposed amended complaint is substantively identical to the operative complaint and challenges the same employment action—his reassignment or realignment—that was already conclusively adjudicated. The Court therefore denies Searcy's motion for leave to file an amended complaint, ECF 22, as futile.

*    *    *

For the foregoing reasons, Searcy's motions for Attorney General's review, ECF Nos. 9–12, and for leave to file an amended complaint, ECF 22, are **DENIED**. Defendant's motion to dismiss, ECF 4, is **GRANTED**, and as a result Plaintiff's complaint is **DISMISSED** for lack of subject matter jurisdiction. A separate order accompanies this memorandum opinion.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: June 6, 2025